## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| **PATRICK GIL,** | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | No. 1:23cv747 (RDA/IDD) |
| | ) | |
| **HAROLD W. CLARKE,** | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OPINION

Patrick Gil ("Petitioner" or "Gil"), a Virginia state prisoner proceeding *pro se*, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his June 10, 2019 convictions in the Circuit Court of the City of Virginia Beach, Virginia. On May 17, 2024, the Respondent filed a Rule 5 Answer and a Motion to Dismiss, with a supporting brief and exhibits. Dkt. Nos. 25-26. On November 22, 2024, the Court advised Gil of the opportunity to file responsive materials pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Dkt. No. 31, but he has not responded within the twenty-one days provided in the November 22, 2024 order.[1] Accordingly, this matter is now ripe for disposition and for the reasons that follow, Respondent's Motion to Dismiss will be granted.

### I. Procedural History

On February 20, 2019, Gil pled guilty to: (i) eluding the police, in violation of Virginia Code § 46.2-817(B); (ii) reckless driving, in violation of Virginia Code § 46.2-852; and (iii) driving without a license, in violation of Virginia Code § 46.2-300. Pursuant to *Alford v. North Carolina*, 400 U.S. 25 (1970), he also pled guilty to two counts of attempted

---

[1] The Court denied Respondent's previous motion to dismiss for failure to exhaust without prejudice on January 24, 2024. Dkt. No. 21. Gil filed a response to that motion to dismiss, Dkt. Nos. 18, 19, and those responses, which are not sworn, have been considered by the Court in resolving the present May 17, 2024 motion to dismiss.

malicious wounding, in violation of Virginia Code §§ 18.2-51 and 18.2-26.  On June 10, 2019, the court sentenced Gil: (i) to five years' imprisonment on each of the malicious wounding convictions, with two years of each sentence suspended; (ii) to twelve months' imprisonment for reckless driving, with no time suspended; and (iii) to six months' imprisonment for driving without a valid license, with all six months suspended.  The judgment order was entered on June 11, 2019.  Dkt. 26-1 at 13.  Gil, his counsel, and the prosecutor stipulated the Commonwealth's evidence as follows:

> On February 23, 2018 at approximate 1440 hours, Chesapeake Bay Bridge Tunnel (CBBT) officers received a call that Northampton County was in pursuit of a southbound vehicle heading to the Bay Bridge Tunnel. At approximately 1445 hours, Northampton County officers approached the toll lanes in pursuit of the vehicle. The vehicle, operated by the defendant, crashed through the gate in Lane 2 at a high rate of speed causing his windshield to shatter.
>
> CBBT officers took lead on the pursuit from the North Plaza, while the other agencies followed behind. Wreckers were dispatched to the end of 3 Island and 1 Island to hold northbound traffic. As they were crossing Fisherman Island, they exceed 100 mph and the defendant was taking up the entire road. A CBBT officer attempted to pass the defendant to slow him down, and the defendant swerved at the officer. The officer backed off and let the defendant continue driving. The defendant almost struck 2 vehicles on C trestle south, passing on the shoulder and making maneuvers around other vehicles. A CBBT officer was able to cause the vehicle to slow down from 100 mph to as low as 40 entering Chesapeake Tunnel South. The defendant was unable to pass the officer, so he passed on the left crashing through a set of construction barrels.
>
> The Officer dropped back in the tunnel and the defendant almost struck a northbound tractor trailer causing all traffic to come to a complete stop in the tunnel. Once they exited the tunnel, the pursuit was called off for safety reasons. CBBT officers kept the defendant in sight and transferred the information to the Virginia Beach Police Department.
>
> At 1449 hours, Virginia Beach Police Department officers were notified of the pursuit. Officers responded to the area to set stop sticks in an effort to stop the pursuit. As the defendant entered the city, VBPD officers took lead on the pursuit. The defendant traveled at a high rate of speed on Northampton Boulevard, followed by marked Virginia Beach patrol units with their emergency equipment activated. The officers with the stop sticks were staged at Northampton Boulevard and Independence Boulevard.
>
> The defendant traveled from the far-left travel lane aiming his vehicle at a uniformed officer on the right-hand shoulder of the roadway. The defendant

left the roadway and directed the front of his vehicle at the officer on the shoulder of the road with the stop sticks deployed. The officer had to run and jump to cover behind his vehicle to avoid being struck by the suspect vehicle. The VBPD officer in pursuit directly behind the defendant was able to bypass the stop sticks in the right travel lane without nearing the officer or his vehicle on the shoulder.

The pursuit continued southbound and the defendant left Northampton Boulevard going westbound on Bayside Road. The defendant entered the industrial area near Bayside Road and Miller Store Road. The defendant came to the dead end of Bayside Road and traversed a parking lot of a warehouse building. While traveling along the backside of the warehouse, the defendant accelerated at another officer who was traveling toward the defendant in an attempt to block the lane of travel behind the building. Before the officer could block the travel lane, the defendant continued on a direct path to hit the officer head on. He narrowly missed a head on collision with the officer. He continued south bound to Miller Store Road.

The defendant again travelled at reckless speeds, and drove southbound in northbound lanes. As they rounded the curve on the south end of the Norfolk Airport, the defendant again traveled in the opposite lane running two civilians off the roadway. As they approached Robin Hood Road, the defendant used the oncoming lane of travel to turn westbound onto Robin Hood Road and continued in the opposite lanes of travel until turning southbound on Military Highway.

The defendant drove southbound on North Military Highway with erratic lane changes, use of the shoulder to pass vehicles, and forcing citizens off the roadway. In approximately the 1200 block of North Military Highway, the defendant entered a construction zone and made a U-turn to get back on North Military Highway northbound. The defendant continued until he entered Interstate 64 westbound.

While on I-64, the defendant continued to weave across all lanes of traffic, used the shoulder to pass vehicles, and traveled in excess of 20 mph over the posted speed limit. The defendant then proceeded northbound on I-564 towards Naval Base Norfolk. He went to the end of I-564 and turned west onto Admiral Taussig Blvd. He was traveling in the right lane and officers were traveling in the left lane in attempts to warn citizens ahead of the impending danger. While approaching Hammond Avenue, the defendant crossed in front of the officers making a U-turn at Hammond Avenue. The defendant struck a marked Virginia Beach patrol vehicle, catching his rear bumper on the officer's push bumper. The defendant accelerated causing his bumper to separate from the frame and knocking his left taillight out. The defendant continued back onto I-564 southbound.

The defendant continued weaving in and out of traffic and then entered I-64 westbound. The defendant continued driving in the right-hand shoulder at excessive speeds. Virginia State Police advised they had all traffic shut down at the Hampton Roads Bridge Tunnel (HRBT). As the defendant approached

3

the tunnel, troopers had deployed a spike strip across the roadway. Both the defendant and a VSP vehicle hit the spike strip. The VSP vehicle pulled off to the side, but the defendant continued and accelerated into the tunnel.

The defendant began to swerve back and forth across all lanes of traffic as smoke began to billow from his front right tire, as the tire was now flat. Passing the halfway point of the tunnel, the defendant was eventually forced to stop as civilian vehicles were stopped blocking all lanes of travel. Officers approached the defendant an[d] attempted to gain entry to his vehicle. The defendant then accelerated again into the right-hand lane striking a vehicle.

Officers attempted to open the defendant's door. The defendant looked at the officer, and accelerated to the left into another car while the officer had his hand on the defendant's door handle. The officer was pinned between 2 cars. The officer was able to escape and proceeded to the passenger side of the defendant's vehicle. The defendant continued to push his vehicle into civilian vehicles. Officers were finally able to enter the defendant's vehicle by breaking the passenger window. The officer reached across the defendant and opened his door to allow the officer on that side access to the defendant.

The defendant was extracted from the vehicle as he refused to exit. The defendant stated he did not stop because, "I just got my truck out of impound for $350 cash and I didn't want to get towed again. I know the tags are bad, I pulled them off another car at the junk yard and I don't have a license." When asked if he knew the police were behind him, he stated, "Yea, why did you all keep following me? In New York they would never follow me like that." He also stated, "This is all bullshit, I didn't hurt anyone, I know I didn't." The defendant did not have an operator's license.

Dkt. 26-1 at 8-11 (cleaned up).

Gil, by counsel, filed a petition for appeal in the Court of Appeals of Virginia pursuant to *Anders v. California*, 386 U.S. 738 (1967). The petition argued that the trial court had abused its discretion by imposing an "excessive" sentence. In his *pro se* supplement, Gil argued "that his guilty pleas were not freely and voluntarily entered" and; that "(1) his trial attorney waived his preliminary hearing in the general district court without his consent, (2) he lacked the requisite intent to support his convictions for attempted malicious wounding, . . . (3) the Commonwealth violated his 'due process' rights by withholding 'dash cam video[s]'"; Dkt. 26-4 at 76, and (4) "the trial court erred by sentencing him under the statute for 'malicious wounding[,] not attempted malicious wounding,'" *id.* at 77. The Court

4

of Appeals of Virginia denied Gil's petition, and his supplement, on March 9, 2020, finding

the appeal to be "wholly frivolous." *Id.* at 69.

Gil, proceeding *pro se*, perfected his appeal to the Supreme Court of Virginia and

requested and was appointed counsel to assist with his appeal.  Gil, through counsel, filed a

petition for appeal, which the court refused on April 16, 2021.  The court denied his petition

for rehearing on October 7, 2021.  Dkt. No. 26-5 at 41, 58.  The Supreme Court of the United

States denied Gil's petition for writ of certiorari on March 28, 2022, and it denied his petition

for rehearing on October 11, 2022.[2]

On October 12, 2022, Gil, proceeding *pro se*, filed a petition for a writ of habeas

corpus in the circuit court, which alleged the following six claims:

a) Due to ineffective counsel: counsel's failure to meet to discuss the case, counsel's failure to investigate the case, counsel's failure to request a change of venue due to media and newspaper article negative publicity in that jurisdiction, and counsel's failure to prepare and file motions.

b) Involuntary guilty plea: counsel, while I was under oath, directed me to plead *Alford* . . . without my consent . . ., counsel, while in holding cell prior to entering . . . coerced [me] mentally due to duress and mistreatment and on medication.

c) Unlawful seizure of vehicle in jurisdiction Northampton, Exmore, Eastern Shore, by Accomack County Deputy Chris Hargis while I parked at 10:45 PM on 02/16/2018 and at 02/17/2018 at 2:00 AM. Accomack County directed vehicle towed in Exmore, it was parked in Exmore three hours 15 minutes and not in motion 6 days prior to chase of multiple jurisdictions.

d) Violation of double jeopardy: sentence excessive based on multiple punishment for the same criminal act.

e) Counsel tricked me into signing waiver of preliminary hearing . . . thinking it was guilty plea to failure to pay toll and fictitious tags.

f) Counsel's motion for discovery filed on March 28, 2018, and Commonwealth failure to respond in 10 days not in court file response.

*Gil v. Edmonds*, Case No. CL22-6329, at 4-19 (Cir. Ct. Va. Beach) ("Hab. at ___") (cleaned

---

[2] *Gil v. Virginia*, 142 S. Ct. 1428 (2022); *Gil v. Virginia*, 143 S. Ct. 347 (2022).

up).[3]

The state habeas court dismissed Gil's petition on May 1, 2023. Dkt. 26-5. The court held that Gil failed to satisfy the requirements of *Strickland v. Washington*, 466 U.S. 668 (1984), as to each of the subparts of his claim (a), and with respect to claims (b) and (f) to the extent that each alleged ineffective assistance of counsel. The habeas court found the non-ineffective assistance portion of claim (f) was barred pursuant to the rule of *Tollett v. Henderson*, 411 U.S. 258 (1973);[4] that claims (c) and (e) were each barred pursuant to *Tollett*; and that claims (b), (c), (d), and (f), to the extent that each did not allege ineffective assistance of counsel were barred by the rule of *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (1974)) ("A petition for a writ of habeas corpus may not be employed as a substitute for an appeal or a writ of error."). Gil filed a notice of appeal on May 30, 2023, and a petition for appeal in the Supreme Court of Virginia on September 11, 2023. *See* Dkt. No. 20 at 2, Dkt. No. 21 at 1.

On October 26, 2023, the Supreme Court of Virginia issued Gil a rule to show cause why his petition for appeal should not be dismissed for his failure to pay the filing fee. The court found

> that the appellant's affidavit in forma pauperis and the certified copy of the appellant's trust account statement, both received on September 25, 2023, demonstrate that the appellant is financially able to pay this Court's $50 filing fee, a rule is hereby issued on the appellant to show cause why the above-styled petition for appeal should not be dismissed for failure to pay the filing fee.

---

[3] Gil did not apply to proceed *in forma pauperis* in state habeas and the circuit court's October 21, 2022 filing order indicates that Gil paid the filing fee. (Hab. at 19, 22).

[4] *Tollett* held that a guilty plea waived any error before the entry of the plea, and that thereafter the only claim a criminal defendant could raise was on regarding the adequacy of the advice he received from counsel.

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel. . . .

411 U.S. at 267.

Dkt. 22-1.  The order allowed Gil thirty days to "cure this defect by paying the filing fee." *Id.*  On January 30, 2024, the court dismissed the petition because Gil failed to cure the defect. Dkt. No. 22-2 (citing Rules 5:1A and 5:17(d)).

## II. Federal Petition

On May 28, 2023, Gil executed his federal § 2254 habeas petition, which was received and filed on June 7, 2023.  On August 28, 2023, Respondent moved to dismiss the petition for failure to exhaust, Dkt. Nos. 15-16; and Gil sought a stay.  Dkt. No. 19 at 31.  On January 24, 2024, the Court denied the motion to dismiss without prejudice and stayed the proceedings to allow Gil to exhaust.  Dkt. No. 21.  On February 16, 2024, Respondent advised the Court that the state court proceedings had concluded, the Court directed Respondent to file a response, which was filed on May 17, 2024.  Dkt. Nos. 25-26.[5]  Gil's claims[6] are:

Ground 1: Ineffective Counsel.

    a.  Failure to investigate my claims of unlawful seizure.

    b.  Failure to file motions for the failure of discovery request [sic] and Commonwealth Attorney response to motion of the request;

    c.  Failure to meet with me and discuss my case;

    d.  Failure to investigate with other counsel in Eastern Shore Marsha Dunning Carter;

    e.  Failure to subpoena telephone records;

    f.  After Court of Appeals of Virginia granted my pro se motion for new counsel, she failed to respond to my letter; and

    g.  Supreme Court of Virginia denied pro se motion for new counsel.

---

[5] On February 16, 2024, the Supreme Court of Virginia dismissed the petition for appeal because Gil failed to pay the filing fee after the Supreme Court of Virgina had determined he was financially able to pay the $50 filing fee, and provided him with thirty days to cure his defect. Dkt. No. 22-2. The show cause was issued on October 26, 2023, over three months before the dismissal order was entered. Dkt. No. 22-1.

[6] A district "court must consider claims as they are presented in the petition, reviewing them under the applicable standard" and it is "the district court's duty to consider only the specific claims raised in a § 2254 petition." *See Folkes v. Nelsen*, 34 F.4th 258, 269 (4th Cir. 2022) (citations omitted); *Frey v. Schuetzle*, 78 F.3d 359, 360–61 (8th Cir. 1996) ("(D)istrict courts must be careful to adjudicate only those claims upon which the petitioner seeks relief and take care not to decide claims upon which the habeas petitioner never intended to seek relief.").

Ground 2: Involuntary Plea.

Ground 3: Excessive sentence.

Ground 4: Failure to review discovery, video recordings from police dash and body cameras, with defendant (*Brady*[7] violation).

Ground 5: Involuntary waiver of preliminary hearing, violation of the Confrontation Clause of the Sixth Amendment.

Ground 6: Defective Virginia Codes [sic] given wrong charges.

Ground 7: Failure to produce in another jurisdiction found guilty in absentia due to deputies being in wrong jurisdiction violation of the Sixth Amendment Confrontation and Fourth Amendment Seizure.

Ground 8: Mental Health issue evaluation not proper procedure conducted at Eastern State Hospital mental coercion duress mistreatment sleep deprivation medication problem.

### III. Exhaustion and Procedural Default

"[A] federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court." *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000). Exhaustion requires that a petitioner present his federal claims to the appropriate state court in the manner required by the state court, to give the state court "a meaningful opportunity to consider allegations of legal error." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986). A claim has not been "fairly present[ed]" for exhaustion purposes if the claim is raised in "a procedural context in which its merits will not be considered." *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner convicted in Virginia must present the *same* factual and legal claims here as he raised in his § 2254 petition to the Supreme Court of Virginia. *See, e.g.*, *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995); *Kasi v. Angelone*, 300 F.3d 487, 501-02 (4th Cir. 2002) (exhaustion requires a petitioner to present "'both the operative facts and the controlling legal principles,'" to the state court) (quoting *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997)). The petitioner

---

[7] *Brady v. Maryland*, 373 U.S. 83 (1963).

bears the burden of proving exhaustion. *See Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). Furthermore, a "claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." *Baker*, 220 F.3d at 288 (citing *Gray v. Netherland*, 518 U.S. 152, 161 (1996)). Such claims are deemed to be simultaneously exhausted and defaulted. *Id.*

Courts also recognize that, "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim," *Breard*, 134 F.3d at 619; *see also Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). A state procedural rule is "adequate" if it is firmly established and regularly or consistently applied by the state court and "independent" if it does not depend on a federal constitutional ruling. *Yeatts v. Angelone*, 166 F.3d 255, 263-64 (4th Cir. 1999); *see also Castille*, 489 U.S. at 351 (raising a claim in a manner in which its merits will not be considered "unless 'there are special and important reasons therefor'" does not constitute "fair presentation") (citations omitted).

Petitioner alleges that: (i) his "defaults [were] caused by ineffective counsel; (ii) " Virginia does not have "a realistic and effective procedural mechanism remedies available;" and (iii) he was denied pens while housed at the Marion Treatment Center (mental health housing).[8] Dkt. No. 19 at 18. Here, Petitioner fails to meet his burden with respect to any of his arguments. To begin with, Virginia's procedural mechanism for raising claims at trial and on appeal is more than

---

[8] The official name of this facility is the Marion Correctional Treatment Center ("Marion"). *See* https://www.vadoc.virginia.gov/facilities-and-offices/.

adequate, and its provisions for post-conviction review (*e.g.,* habeas, writs of actual innocence) are likewise adequate.[9] Next, Petitioner's claims of ineffective assistance to excuse his default are mostly conclusory and each will be addressed within the context of each claim below. Finally, Petitioner's assertion that he was denied pens while in a mental health housing unit does not establish cause as it is refuted by the records of this Court and the numerous handwritten pleadings, briefs, and petitions he has filed that are part of the record before the Court. Gil made these filings during the same time period that he now claims to have lacked access to writing instruments, and several of them were filed while he was detained at Marion. Those filings include supplemental briefs; a petition for rehearing on direct appeal; a petition for a writ of certiorari and petition for rehearing (mostly handwritten); and a petition for appeal (habeas). Dkt. Nos. 26-4 at 33-50 (Virginia Beach City Jail, 11/8/2019); 26-5 at 21-37 (Greensville Correctional Center, 8/17/2020); 41-56 (Marion, 6/3/2021); 59-75 (Marion, 12/ 30/2021); 91-110 (Buckingham Correctional Center, 8/14/2022); 112-36 (Marion, 9/11/2023). In addition, he was able to file his handwritten state habeas petition, Hab. at 2-21, and had no trouble in preparing and filing the instant petition— also handwritten.[10] Because Gil clearly had access to the necessary writing instruments during the

---

[9] Indeed, there is no constitutional right to appeal or for habeas or postconviction review. *Lackawanna County Dist. Atty. v. Coss*, 532 U.S. 394, 402-03 (2001) (although "each State has created mechanisms for both direct appeal and state postconviction review . . . there is no constitutional mandate that they do so") (citing *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987) (no constitutional right to state postconviction review); *Abney v. United States*, 431 U.S. 651, 656 (1977) (no constitutional right to direct appeal)). "Together, exhaustion and procedural default promote federal-state comity by affording States 'an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights,' and by protecting against 'the significant harm to the States that results from the failure of federal courts to respect' state procedural rules." *Shinn v. Ramirez*, 596 U.S. 366, 379 (2022) (citations omitted).

[10] Gil filed his handwritten § 2254 petition on June 7, 2023, 32-pages, and was detained in Marion at that time. During the course of these proceedings, Gil has filed handwritten pleadings, which include his 32-page September 13, 2023 opposition to the motion to dismiss that indicates he was still at Marion at that time. Dkt. No. 19.

Gil also filed a civil rights action on May 22, 2022. *Gil v. Doe et al.*, No. 1:22-cv-00618-RDA-JFA, 2023 WL 7924861 (E.D. Va. Nov. 14, 2023), *aff'd*, No. 23-7244, 2024 WL 3565825 (4th Cir. July 29, 2024). In the course of that litigation, Gil filed a 14-page handwritten complaint (Buckingham Correctional Center, 5/18/2022); a 17-page handwritten amended complaint (Buckingham Correctional Center, 11/15/2022); a 22-page handwritten second amended complaint (Greensville Correctional Center, 3/6/2023); declaration for default (Marion, 5/31/2023); motion for extension of time (Marion, 710/2023); a 20-page handwritten third amended complaint (Marion, 7/25/2023); a proposed summons (Marion, 8/9/2023); and a notice of appeal (Marion, 12/3/2023). The civil action was dismissed

applicable period, Gil also fails to meet his burden with respect to this claim.  Thus, all of Gil's habeas claims are defaulted.

### IV. Cause and Prejudice

Federal courts may not review defaulted claims absent a showing of cause and prejudice, or a fundamental miscarriage of justice such as actual innocence. *Harris v. Reed*, 489 U.S. 255, 260 (1989); *Shinn*, 596 U.S. at 371 ("To overcome procedural default, the prisoner must demonstrate 'cause' to excuse the procedural defect and 'actual prejudice' if the federal court were to decline to hear his claim.") (quoting *Coleman*, 501 U.S. at 750)).  The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. *See id.* at 753-54; *Clozza v. Murray*, 913 F.2d 1092, 1104 (4th Cir. 1990).  To show "prejudice," a petitioner must show an alleged constitutional violation worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).  Importantly, a court need not consider the issue of prejudice in the absence of cause. *See Kornahrens v. Evatt*, 66 F.3d 1350, 1359 (4th Cir. 1995).

Although ineffective assistance of counsel may be sufficient to establish "cause" to excuse a default, *see Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 480 (E.D. Va. 2005),

> where a petitioner for federal habeas relief seeks review of claims defaulted during state habeas proceedings, he must show that he raised the ineffectiveness argument as a cause for the defaulted substantive claims during his state habeas proceedings. If a petitioner did not raise the ineffectiveness claim at the state habeas level, a federal habeas court may not consider it. *Edwards*, 529 U.S. at 452–53.

*Powell v. Kelly*, 531 F. Supp. 2d 695, 723 (E.D. Va. 2008), *aff'd*, 562 F.3d 656 (4th Cir. 2009).

---

on November 14, 2023, and his subsequent appeal was dismissed on July 29, 2024.

As discussed *infra*, each of Gil's claims of ineffective assistance of counsel fails. Thus, he cannot meet the cause standard to excuse his default. For ease of discussion and due to the inconsistent manner in which Gil has litigated his claims, his assertions of ineffective assistance of counsel as cause will be addressed within the discussion of each claim.[11]

### III. Standard of Review

For claims that were decided on the merits in state court, and exhausted without default, those claims will be reviewed under the Anti–terrorism Effective Death Penalty Act of 1996 ("AEDPA"), which provides that "a federal court may not grant a state prisoner's habeas application unless the relevant state-court decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009). "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 20 (2013). An unreasonable application of federal law is not the same as an incorrect application. "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable–a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *accord Renico v. Lett*, 559 U.S. 766, 772–73 (2010). That is, the state court's judgment "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (internal quotations and citation omitted); *see Harrington v. Richter*, 562 U.S. 86, 103 (2011) (state decision is unreasonable application of federal law only if ruling so "lacking

---

[11] Although Gil has not referenced *Martinez v. Ryan*, 566 U.S. 1 (2012), which recognized a narrow exception for defaulted claims of ineffective assistance of counsel in a state, such as Virginia, where a prisoner is not allowed to raise an ineffective assistance of counsel claim on direct appeal—provided the claim of ineffective assistance of trial counsel is substantial. *Id.* at 17. The Court will address his conclusory assertions of ineffective assistance of counsel under *Martinez*'s "substantial" claim requirement.

in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement").

This "highly deferential standard . . . demands that state court decisions be given the benefit of the doubt." *Renico*, 559 U.S. at 773 (internal quotations and citations omitted). "The required deference encompasses both the state court's legal conclusions and its factual findings." *Lenz v. Washington*, 444 F.3d 295, 299 (4th Cir. 2006). "[A] determination on a factual issue made by a State court shall be presumed correct." *Tucker v. Ozmint*, 350 F.3d 433, 439 (4th Cir. 2003) (quoting 28 U.S.C. § 2254(e)(1)). AEDPA also limits federal habeas "review under § 2254(d)(1) . . . to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster,* 563 U.S. 170, 181 (2011). "In reviewing a habeas petition, federal courts must presume the correctness of a state court's factual determinations unless the habeas petitioner rebuts the presumption of correctness by clear and convincing evidence." *Green v. Johnson*, 515 F.3d 290, 299 (4th Cir. 2008); *see Schriro*, 550 U.S. at 473-74.

To be entitled to relief on an ineffective assistance claim, a petitioner must show that (1) trial counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists that but for counsel's error, the result of that proceeding would have been different. *Strickland v. Washington*, 466 U.S.668, 687-94 (1984). *Strickland* does not guarantee perfect representation, only a "'reasonably competent attorney.'" *Id.* at 687 (citation omitted). There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in the case. *Id.* at 690. With regard to guilty pleas, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*,

474 U.S. 52, 59 (1985). In this case, Gil has defaulted his ineffective assistance of trial counsel claims and to the extent *Martinez* is applicable to a claim, "a federal court considers it *de novo*, rather than under AEDPA's deferential standard of review." *Gray v. Zook*, 806 F.3d 783, 789 (4th Cir. 2015) (citing 28 U.S.C. § 2254(d) (providing review standards for "any claim that was adjudicated on the merits in State court proceedings").

### A. Ground 1(a)

In Ground 1(a), Gil alleges counsel failed "to investigate my claims of unlawful seizure." Dkt. No. 1 at 10. Ground 1(a) was not raised in state court and is therefore exhausted and defaulted, which precludes federal review. Gil slightly amplifies this claim in his response to the motion to dismiss by stating that he told his attorney that his "vehicle was seized 6 days prior to the chase" by the police. Dkt. No. 19 at 22. To the extent Gil may rely on *Martinez* and seeks to establish cause to excuse his default, the allegation of ineffective assistance does not establish an unreasonable act or omission on the part of trial counsel, the requisite prejudice under *Hill*, and is not a substantial claim. Indeed, the state habeas court expressly found that the alleged improper seizure was "unrelated to any of the charges [Gil] faces in this Court." Dkt. No. 22-6 at 6. Gil does not address this relevancy ruling, which is consistent with federal law, and presumed to be correct. Gil has not shown that this ruling was either contrary to *Strickland* or an unreasonable application of *Strickland* because attorneys are not required to file "'futile motions.'" *Sharpe v. Bell,* 593 F.3d 372, 383 (4th Cir. 2010) (quoting *Moody v. Polk*, 408 F.3d 141, 151 (4th Cir. 2005) (citation omitted)). Accordingly, Gil has not established cause to excuse his default and Ground 1(a) will be dismissed.

*B. Ground 1(b)*

In Ground 1(b), Gil alleges counsel failed "to file motions for the failure of discovery request and Commonwealth Attorney response to motion of the request." Dkt. No. 1 at 10. In his state habeas claim (f), Gil alleged his trial counsel failed to pursue the prosecution's failure to provide discovery. Dkt. No. 22-6 at 21. Thus, Ground 1(b) is exhausted, but it is also defaulted because it was never presented to the Supreme Court of Virginia.

Nevertheless, Gil's allegation of ineffective assistance has no merit and was rejected by the state habeas court, which found that Gil had the benefit of all of the discovery from the prosecution before he entered his pleas, and that counsel had not "performed deficiently." *Id.* at 22. The record supports that conclusion and establishes that Gil's counsel was provided discovery on July 3, 2018, and again on February 5, 2019. (CCT at 19, 28-29, 62-63).[12]  On February 6, 2019, the circuit court granted trial counsel a continuance to review the evidence, *id.* at 65, and he did not plead guilty until two weeks later.[13]  Counsel's affidavit, relied upon by the state habeas court, avers that she "provide[d] discovery in a timely fashion and within the time to evaluate and discuss with" Dkt. No. 22-7 at 3. Thus, the record refutes any assertion that counsel was ineffective in her representation of Gil, and also refutes the suggestion that there was any prejudice. Further, as counsel was provided with the discovery in a timely fashion, any motion to compel would have been frivolous. *Moody*, 408 F.3d at 151 ("Counsel is not required to engage in the filing of futile motions.") (citation omitted). Accordingly, the allegation of ineffective assistance of counsel is not substantial, and there is

---

[12]  References to the criminal manuscript record are designated as follows, "CCT at ___."

[13]  Counsel's affidavit in the state habeas proceeding establishes that video evidence related to incident that gave rise to the charges was discovered shortly before the plea was scheduled (originally on January 22, 2019), and she requested a continuance to review the video and discuss it with Petitioner. Dkt. No. 22-7 at 2-3.

no cause to excuse Gil's default. Gil has not shown that this ruling was either contrary to *Strickland* or an unreasonable application of *Strickland* and therefore Ground 1(b) will be dismissed.

C. *Ground 1(c)*

Ground 1(c) alleges counsel failed "to meet with [Gil] and discuss [his] case." Dkt. No. 1 at 10. In his unsworn response, Petitioner states that counsel: (i) failed to meet with him on October 19, 2018 or February 6, 2019, (ii) failed to file a motion for a change of venue, and (iii) did not provide any discovery in a timely fashion, and Gil asserts that the state habeas court erred in finding to the contrary. Dkt. No. 19 at 25. The substantive portions of this claim were part of defaulted state habeas claim (a). Ground 1(c) is thus exhausted but defaulted and Gil has not established cause to excuse the default.

In any event, trial counsel's affidavit in the state habeas proceeding, relied upon by the circuit court, stated that "[a]ll discovery was forwarded to the defendant. Discovery was provided in a timely fashion and within time to evaluate and discuss with defendant." Dkt. No. 22-7 at 3. Additionally,

> the plea was initially set for January 22, 2019. The Commonwealth was still trying to ascertain if there were any videos of the incident. The case was continued to February 6, 2019. Video evidence was found, reviewed by counsel, and discussed with Petitioner. A continuance occurred in order to review the tape. The matter was reset for February 20, 2019

*Id.* at 2-3; Dkt. No. 1. The state habeas record also establishes that counsel met the petitioner "and reviewed the [Pre-Sentence Report] in order to see if he had any additions, deletions, or corrections;" and went over the guidelines with Gil, which reflected "four (4) years eight (8) months at the low end, eight (8) years nine (9) months at the midpoint, and ten (10) years six (6) months at the high end." After Gil received "an active sentence of nine (9) years felony time and twelve (12) months misdemeanor time," counsel filed a motion for reconsideration,

16

which the trial court denied. Dkt. No. 22-7 at 2-3. The state habeas court found counsel was not ineffective. The record does not establish that counsel was ineffective or that Petitioner suffered the requisite prejudice from any alleged deficiency. Further, Gil has not shown that this ruling was either contrary to *Strickland* or an unreasonable application of *Strickland.* Gil has thus not established cause to excuse his default, and Ground 1(c) will be dismissed.

### D. Ground 1(d)

Ground 1(d) alleges counsel failed "to investigate with other counsel in Eastern Shore Marsha Dunning Carter." Dkt. No. 1 at 10. Gil did not raise this claim in state court, and even though he referenced it in his response to the Respondent's motion to dismiss that reference is wholly conclusory. Dkt. No. 19 at 25. The Fourth Circuit requires "a specific proffer" to support the prejudice component of an ineffective assistance claim and a petitioner's failure to do so "reduces any claim of prejudice to mere speculation and is fatal to his claim." *Vandross v. Stirling*, 986 F.3d 442, 452 (4th Cir. 2021); *Beaver v. Thompson*, 93 F.3d 1186, 1195 (4th Cir. 1996) ("an allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced").[14] This claim was not raised in state habeas, and is therefore deemed exhausted and defaulted, and the conclusory allegation in the response does not state a claim of ineffective assistance of counsel much less a substantial claim under *Martinez*. Accordingly, Ground 1(d) will be dismissed.

---

[14] The Fifth Circuit has held that

> without a specific, affirmative showing of what the missing evidence or testimony would have been, "a habeas court cannot even begin to apply *Strickland's* standards because it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiencies in counsel's performance."

*Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994) (quoting *United States v. Lane*, 926 F.2d 694, 701 (7th Cir. 1991)).

*E. Ground 1(e)*

In Ground 1(e), Gil alleges that his trial counsel failed "to subpoena telephone records." This claim was not presented in state court through the Supreme Court of Virginia and it is exhausted and defaulted. Moreover, Gil has not established what the alleged records would show or their relevance to his case. *See supra* at 16 & fn. 14 (*Vandross*, 986 F.3d at 452; *Beaver*, 93 F.3d at 1195). This claim is exhausted and defaulted, and the conclusory allegation in the response does not state a claim of ineffective assistance of counsel much less a substantial claim under *Martinez*. Accordingly, Ground 1(e) will be dismissed.

*F. Ground 1(f)*

In Ground 1(f), Gil alleges that after the Court of Appeals of Virginia granted his "pro se motion for new counsel, she failed to respond to my letter." Dkt. No. 1 at 11. In his state habeas claim, Gil alleged that after his counsel had filed an *Anders* brief in the Court of Appeals of Virginia, she was allowed to withdraw but was subsequently re-appointed by the Supreme Court of Virginia. Gil, however, does not allege any specific deficient performance on appeal by counsel other than that counsel "never wrote [him] back" after she was re-appointed, and that, when counsel visited him, she talked "about another client case." Dkt. No. 19 at 26. The claim is deemed exhausted but defaulted because it was never presented to the Supreme Court of Virginia. Further, *Martinez* does not extend to claims of ineffective assistance of counsel on appeal. *See Davila v. Davis*, 582 U.S. 521, 529 (2017) (declining to extend the holding of *Martinez* to defaulted claims of ineffective assistance of appellate counsel); *Banks v. Workman*, 692 F.3d 1133, 1148 (10th Cir. 2012) ("*Martinez* applies only to 'a prisoner's procedural default of a claim of ineffective assistance at trial,' not to claims of deficient performance by appellate counsel") (quoting *Martinez*, 566 U.S. at 8).

Importantly, Petitioner has not even alleged that there was a ground that should have been raised upon appeal that was not raised. *See United States v. Allmendinger*, 894 F.3d 121, 126 (4th Cir. 2018) ("The ineffective assistance inquiry therefore requires a court to compare the strength of an issue not raised on direct appeal . . . with the strength of arguments that were raised.") (citing *United States v. Mason*, 774 F.3d 824, 828-29 (4th Cir. 2014); *see also Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."). The record therefore does not establish counsel was ineffective or that Petitioner was in any way prejudiced by the representation. Accordingly, Gil has not established cause to excuse his default, and Ground 1(f) will be dismissed.

### G. Ground 1(g)

In Ground 1(g), Gil alleges that the Supreme Court of Virginia denied his *pro se* motion for "new counsel." This claim is deemed exhausted and defaulted because it was not raised in state court. In any event, the claim has no merit. The state courts routinely found Gil's assertions of error to be frivolous and without merit, noting that his appeal was wholly frivolous, that his state habeas ineffective assistance of counsel claims were without merit. The courts also found that Gil had failed to establish that there was a "'reasonable probability that, but for counsel's errors, he would have plead not guilty and would have insisted on going to trial.'" Dkt. No. 26-6 at 22 (quoting *Hill*, 474 U.S. at 59).[15] His confused presentation of

---

[15] As the state habeas court found, Gil's plea agreement provide him with "substantial benefits":

Petitioner was . . . advised prior to his preliminary hearing waiver that if he didn't waive and plead that the attempt malicious wounding charges would be amended to attempt capital murder and that a jury would be requested by the Commonwealth. At the time, and upon a finding of guilt, a jury would sentence him in accordance with the statutory minimum-maximum range. The jury would be provided, at that juncture, his entire record. The elevated charges and jury sentencing was discussed at length.

Gil has not offered any non-frivolous defense to his crimes, and he received substantial benefits by

being deprived of "new counsel" negates the fact that he was always represented by counsel, and he does not have a right to a counsel of his own choosing. *See Caplin & Drysdale v. United States*, 491 U.S. 617, 624 (1989) ("defendants in criminal cases [have] the right to adequate representation, but those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts. '[A] defendant may not insist on representation by an attorney he cannot afford.'") (quoting *Wheat v. United States*, 486 U.S. 153, 159 (1988)); *accord United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006) ("While a defendant who does not require appointed counsel may choose his attorney, the right to choose one's counsel 'does not extend to defendants who require [court appointed] counsel.'") (citing *Wheat*, 486 U.S. at 159; *Caplin & Drysdale*, 491 U.S. at 624, 626).

Here, Gil was appointed a public defender, Annette Miller, who represented Gil from the waiver of his preliminary hearing through sentencing, and on appeal as well. CCT at 6, 99. Miller filed a notice of appeal, had the transcripts prepared and filed, and filed a petition for appeal in the Court of Appeals of Virginia. *Id.* at 105-07; Dkt. No, 26-4 at 1-18 (citing *Anders v. California*, 386 U.S. 738 (1967). Miller sought and was granted an extension of time for Gil to file a *pro se* supplemental petition for appeal. Dkt. No. 26-4 at 19. Gil filed his *pro se* supplemental petition on November 8, 2019. *Id.* at 33-50. On March 9, 2020, the Court of Appeals of Virginia reviewed the petition for appeal and Gil's *pro se* supplemental petition for appeal, and "determined the case to be wholly frivolous." *Id.* 69; 69-78. The

---

pleading guilty, including the Commonwealth's agreement not to seek charges for attempted capital murder. It therefore was not objectively unreasonable for him to plead guilty. Gil thus has failed to show the chance of a different outcome was substantial where he pleaded guilty after having been advised of the consequences of his pleas.

Dkt. No. 26-6 at 22-23.

same order granted Miller's motion to withdraw. *Id.* at 78. Gil filed a timely notice of appeal to the Supreme Court of Virginia. *Id.* at 79.

On April 15, 2020, Gil filed a motion requesting the Supreme Court of Virginia to appoint counsel for him.[16] VSCT at 7. The Supreme Court of Virginia granted Gil's motion on May 14, 2020, and appointed Miller to represent him. *Id.* at 18. On June 9, 2020, Miller, filed a petition for appeal, citing *Anders,* and requested leave to withdraw, Dkt. No. 26-5 at 1-20. Gil filed a motion on June 18, 2020 to appoint him "new counsel" because Miller had, for a second time, requested leave to withdraw. VSCT at 46. On July 17, 2020, the Supreme Court of Virginia granted Miller's motion to allow Gil to file a *pro se* supplemental petition for appeal and denied Gil's motion for new counsel. *Id.* at 51. Thereafter, Gil filed a *pro se* supplemental petition for appeal. Dkt. No. 26-5 at 21-37. On April 16, 2021, the court granted the motion to withdraw and "upon further consideration of the entire record, f[ound] no legal issues arguable on their merits and therefore refuse[d] the petition for appeal without appointment of additional counsel." *Id.* at 40. Gil filed a petition for rehearing, which the court denied on October 7, 2021. *Id.* at 41, 58.[17]

On November 5, 2021, Gil filed a motion in the Supreme Court of Virginia requesting the court appoint counsel for him to pursue a petition for a writ of *certiorari* in the Supreme Court of the United States. VSCT at 145. On November 8, 2021, in response, the Clerk of the Supreme Court of Virginia replied as follows:

> This will confirm receipt on November 5, 2021, of the "motion for assignment of counsel" in the above-referenced case. Your appeal has concluded in this Court. If you are appealing to the United States Supreme Court, you should file any motions related to that appeal in that Court. No action will be taken in this Court on this

---

[16] *Patrick Nilo Gil v. Commonwealth*, Record No. 200796. (referenced as "VSCT at ___").

[17] The Supreme Court of the United States denied Gil's petition for writ of *certiorari* on March 28, 2022, and denied his petition for rehearing on October 11, 2022. *Gil*, 142 S. Ct. 1428; *Gil*, 143 S. Ct. 347.

motion.

*Id.* at 149.  To the extent Gil asserts he was entitled to counsel to file a petition for a writ of

*certiorari*, he had no such right.  *See Ross v. Moffitt*, 417 U.S. 600, 617 (1974) (no right to

counsel to file a petition on a writ of *certiorari*).[18]

The record establishes that Gil was represented by counsel at trial, on appeal in the

Court of Appeals of Virginia, and in the Supreme Court of Virginia as well.  Thus, claim 1(g)

will be dismissed.

### H. Non-Ineffective Assistance Claims

### Ground II: Involuntary Plea.

Gil first argues that his guilty plea was involuntary.  Gil asserts in his Petition that he

told his counsel he did not want to enter an *Alford* plea or plead guilty due to his mental illness

and that he remained silent when asked how he wanted to plead.  Dkt. No. 1.  The record

contradicts Gil's allegations.  The record reflects that Gil did not remain silent; rather, Gil

affirmatively entered his plea and that his pleas were knowingly and voluntarily entered based

on the colloquy that he gave.

The Court of Appeals of Virginia rejected the claim that Gil's plea was involuntary

on appeal.  Its decision was based upon a thorough review of the entire colloquy, and not

merely the snippet that Gil references.

> The record demonstrates that when the trial court asked for appellant's pleas,
> appellant responded, "I plead--," and his attorney stated, "He pleads guilty,
> Your Honor, to all of them except the two attempt[ed] malicious [wounding
> charges]; and on those, he's going forward on a guilty plea under *Alford*." The
> trial court then conducted a careful colloquy with appellant and confirmed his
> understanding of the charges, their elements, and the potential sentences he

---

[18] *See Miller v. Keeney*, 882 F.2d 1428, 1431 (9th Cir. 1989) (holding that "the fourteenth amendment does not require a state to provide any counsel to a defendant seeking to file a certiorari petition in the United States Supreme Court") (citing *Ross v. Moffitt*, 417 U.S. 600, 617-18 (1974); *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) (recognizing that "the right to appointed counsel extends to the first appeal of right, and no further").

faced. Appellant assured the trial court that after discussing the charges with his attorney he decided "for [himself]" to plead guilty to felony eluding, reckless driving, and driving without an operator's license because he was "in fact, guilty of those" offenses. He also told the trial court that he was entering *Alford* pleas to the two attempted malicious wounding charges because the "Commonwealth ha[d] sufficient evidence" to convict him of those charges. He stated that he understood that *Alford* pleas had the same effect as "guilty plea[s]."

Appellant told the trial court that he understood "the maximum punishment for [the] crimes [was] twenty-five years imprisonment and twenty-four months in jail plus all fines and court costs." Appellant acknowledged that same understanding in the *"Guilty/Alford/Nolo* Contendere Plea" form that he advised the trial court that he had reviewed with counsel and signed. He understood that by pleading guilty that he was waiving several trial rights, including a trial by jury, to confront and cross-examine the witnesses against him, to not incriminate himself, and to appeal certain decisions of the trial court. Appellant answered the trial court's questions appropriately and evinced his understanding of the proceedings and the consequences of his pleas. Additionally, he declined the opportunity to ask any questions of the trial court.

Appellant's statements to the trial court during the guilty plea colloquy "conclusively establish[]" that his pleas were entered freely, voluntarily, and intelligently with an understanding of their consequences. *Id.* And appellant offers no "valid reason why he should be permitted to controvert" those statements. *Id.* Accordingly, we reject appellant's argument that his pleas were involuntarily entered without his consent.

Dkt. No. 26-4 at 75-76. The transcript of the proceeding states as follows:

THE COURT: Have you discussed with your attorney whether you should plead guilty or not guilty?

THE DEFENDANT: Yes.

THE COURT: After that discussion, did you decide for yourself that you should plead guilty?

THE DEFENDANT: Yes.

THE COURT: Are you entering this plea of guilty and the Alford Plea freely and voluntarily with a full and complete understanding of the nature and consequences of those pleas?

THE DEFENDANT: Yes.

THE COURT: All right. Have you entered the pleas of guilty because you are, in fact, guilty of those crimes charged?

THE DEFENDANT: Yes.

THE COURT: Are you entering the Alford Plea because it is your position that

the Commonwealth has sufficient evidence to find you guilty of those charges?

THE DEFENDANT: Yes.

(2/20/19 Tr. at 6-7). Gil also confirmed for the trial judge that he believed that the prosecution could prove the stipulation of facts that he had signed, *id.* at 9, which is substantially the same as the summary of facts by the Court of Appeals of Virginia. *See supra* at 2-5. Gil acknowledged he had read and signed the guilty plea questionnaire and that he had answered all of the questions truthfully. 2/20/19 Tr. at 3, 8; CCT at 68-71.

The Supreme Court of Virginia summarily affirmed the Court of Appeals of Virginia, and therefore this Court looks to the last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991) (holding that when a state appellate court affirms a lower court decision without reasoning, the court may look through the later, unreasoned, summary disposition and focus on the last reasoned decision of the state court). Based on its review of the Petitioner's plea colloquy with the trial judge (and this Court's review of the same), the Court of Appeals of Virginia's decision that Gil's plea was knowing and voluntary is not contrary to, or an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. Accordingly, Ground II will be dismissed.

Ground III: Excessive Sentence.

In Ground III, Gil alleges that his active sentence of nine years and twelve months in prison is excessive. He argued on direct appeal "that the trial court abused its discretion" because it failed to consider: "(1) [a]ppellant's mental health diagnosis; (2) [t]he actual facts and injuries associated with the charges/victims and instead focusing on what could have happened rather than what did happen; and (3) [t]he rehabilitative objective of a suspended sentence." Dkt. No. 26-4 at 69-70. The Court of Appeals of Virginia affirmed the trial court noting that

24

the sentences imposed by the trial court were within the sentencing ranges set by the legislature. *See* Code §§ 18.2-10, 18.2-11, 18.2-26(2), 18.2-51, 46.2-817(B), 46.2-852, and 46.2-300.

Additionally, it is within the trial court's purview to weigh any mitigating circumstances presented by appellant. *See Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000). Here, the trial court considered appellant's mitigating evidence, including his mental illness and that nobody ultimately was injured. Balanced against those considerations, however, was the aggravated nature of appellant's conduct over an extended pursuit. Appellant "crashed" through the toll gate at the CBBT and fled from the police at speeds exceeding one hundred miles per hour. He recklessly passed "civilian" vehicles using the shoulder and the "oncoming lane of travel[,]" forcing other motorists "off the roadway.' As the pursuit continued, appellant struck a police vehicle as he attempted a U-turn on the highway and collided with "civilian" vehicles in the Hampton Roads Bridge Tunnel. Most egregiously, he twice drove his vehicle towards uniformed police officers who were on foot. One officer had to dive out of the way to avoid being struck, and the other was "pinned" between two cars. Throughout the thirty-five-minute pursuit, appellant displayed a reckless and malicious disregard of human life.

"Criminal sentencing decisions are among the most difficult judgment calls trial judges face." *Du [v. Commonwealth]*, 292 Va. [555,] 563 [(2016)]. "Because this task is so difficult, [we] must rely heavily on judges closest to the facts of the case-those hearing and seeing the witnesses, taking into account their verbal and nonverbal communication, and placing all of it in the entire context of the case." *Id.* Here, the trial court considered the evidence and imposed the sentences that it deemed appropriate. Having reviewed the record, we hold that the sentences represented a proper exercise of discretion.

Dkt. No. 26-4 at 74-75.

Gil's claim that the trial court abused its discretion by imposing the nine year and twelve-month sentence provides no basis for federal habeas corpus relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (same). In the Fourth Circuit, it "is clear that, generally, a sentence imposed by a state court which does not exceed the statutory maximum is not reviewable in a federal habeas corpus proceeding." *Ledford v. Hinton*, 563 F. Supp. 785, 786-87 (W.D.N.C. 1983) (citing *Stevens v. Warden*, 382 F.2d 429, 433 (4th Cir. 1967)); *Wright v. Maryland*

*Penitentiary, State of Maryland*, 429 F.2d 1101, 1103 (4th Cir. 1970) (same): *see White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law."). Because the sentence imposed by the circuit court in this case is below the statutory maximum, Gil has not stated a federal habeas claim, and Ground III will be dismissed.

Ground IV: Failure to review discovery and *Brady* violation.

In Ground IV, Gil alleges that his counsel failed "to review discovery, video recordings from police dash and body cameras, with" him. Dkt. No. 1 at 16. The first part of this claim appears to simply be a repetition of Gil's defaulted ineffective assistance of counsel claim. Thus, to the extent that Gil is argue ineffective assistance of counsel based on a failure to review discovery, the Court has already discussed that issue (*supra*, in discussing Ground 1(c)) and found that the claim is defaulted, that there is no cause to excuse the default, and that the claim also had no merit.

The only new claim in Ground IV, is Gil's reference to a *Brady* violation. It is clear that this reference to "*Brady*" is frivolous because the record establishes that trial counsel was provided all of the evidence about which Gil complains. As courts sensibly recognize, "there is no *Brady* violation if the defense is aware of the evidence in time to reasonably and effectively use it at trial." *United States v. Jeffers*, 570 F.3d 557, 573 (4th Cir. 2009) (citing *United States v. Smith Grading & Paving, Inc.*, 760 F.2d 527, 532 (4th Cir. 1985)). As Petitioner admits counsel had the discovery material so there could be no *Brady* violation.[19] Accordingly, Ground IV also fails to state a habeas claim and will be dismissed.

---

[19] In his response to the motion to dismiss, Gil admits that, with the exception of the videos, his counsel "turned over" the discovery to him "after sentencing." Dkt. No. 19 at 29.

Ground V: Involuntary waiver of preliminary hearing, violation of the Confrontation

Clause of the Sixth Amendment.

In part (1) of Assignment of Error III in his direct appeal, Gil argued that "his trial

attorney waived his preliminary hearing in the general district court without his consent."

The Court of Appeals of Virginia held that Gil had waived this claimed error:

> By entering guilty pleas, however, appellant waived each of the above issues
> for appeal. A voluntary and intelligent guilty plea is "an admission of guilt and
> a waiver of all non-jurisdictional defects. It represents a break in the chain of
> events which has preceded it in the criminal process." *Clauson v.*
> *Commonwealth*, 29 Va. App. 282, 294 (1999) (quotations omitted) (citing
> Wayne R. LaFave & Jerold H. Israel, Criminal Procedure § 10.2(d), at 787
> (1984)). Accordingly, it "is a 'waiver' of all non-jurisdictional defects that
> occurred before entry of the plea." *Trevathan v. Commonwealth*, 297 Va. 697,
> 697 (quoting Miles, 266 Va. at 113-14). Such a waiver even applies to "claims
> relating to the deprivation of constitutional rights that occurred prior to the entry
> of the guilty plea." *Beaver v. Commonwealth*, 232 Va. 521, 526-27 (1987)
> (quoting *Tollett v. Henderson*, 411 U.S. 258,267 (1973)).
>
> None of the above arguments alleges a jurisdictional defect; instead, they all
> address issues arising before appellant entered his pleas. Accordingly, those
> issues are waived for appeal. *Trevathan*, 297 Va. at 698 ("[W]hen entry of a
> guilty plea waives an issue for appeal, the correct disposition is denial, not
> dismissal.").

Dkt. No. 26-4 at 76-77.[20]  The Court of Appeals of Virginia's decision was not contrary to,

or an unreasonable application of clearly established federal law as determined by the

Supreme Court of the United States.  The remainder of the claim, an alleged violation of the

Confrontation Clause, is deemed simultaneously exhausted and defaulted.  Furthermore, Gil

has not established cause to excuse his default, and any error is waived pursuant to the rule

of *Tollett*.  Accordingly, Ground V will also be dismissed.

---

[20] *See Sargent v. Waters*, 71 F.3d 158, 160 (4th Cir. 1995) (holding that, "while the governing standard as to
whether a plea of guilty is voluntary for purposes of the Federal Constitution is a question of federal law, and not a
question of fact subject to the requirements of [former Section 2254(d), now Section 2254(e)(1)], the historical facts
underlying such pleas are entitled to deference under the statute").

Ground VI: Defective Virginia charges.

In Ground VI, Gil alleges that he was prejudiced during his plea and sentencing because the presiding judge, on occasion, referred to the charges as malicious wounding instead of attempted malicious wounding.[21]   While the judge misspoke a few times, the record establishes that Gil was indicted for attempted malicious wounding and sentenced for attempted malicious wounding.  CCT at 56.  The plea form correctly noted he was pleading guilty to two counts of attempted malicious wounding (CCT at 65); the order reflecting the pleas indicates the pleas were to attempted malicious wounding (*id.* at 72); and the sentencing order indicates that Gil was sentenced on two counts of attempted malicious wounding.  *Id.* at 99.  Gil raised this issue in his *pro se* petition for appeal, and the Court of Appeals of Virginia found the alleged error had no merit.

> Malicious wounding is a Class 3 felony, punishable by "a term of imprisonment of not less than five years nor more than 20 years." Code §§ 18.2-10 and 18.2-51. Attempted malicious wounding is a Class 5 felony, punishable by "a term of imprisonment of not less than one year nor more than 10 years." Code § 18.2-10; Code§ 18.2-26(2) ("If the felony attempted is punishable by a maximum punishment of twenty years' imprisonment, an attempt thereat shall be punishable as a Class 5 felony."). Appellant's final sentencing order states that the trial court convicted him of attempted malicious wounding, cites the attempt statute—Code § 18.2-26, and sentences appellant within the statutory range authorized for attempted malicious wounding. "A recital of proceedings in a judicial order is an 'absolute verity and it is not subject to collateral attack.'" *Kem v. Commonwealth*, 2 Va. App. 84, 88 (1986) (quoting *Kibert v. Commonwealth*, 216 Va. 660, 662 (1976)). "Where a defendant does not object to the accuracy of an order within 21 days after its entry, an appellate court may 'presume that the order, as the final pronouncement on the subject, rather than

---

[21] On February 20, 2019, when Gil entered his pleas, Gil and his trial counsel corrected the trial judge when he misspoke before arraignment, noting he was charged with "attempted malicious wounding." (2/20/2019 Tr. at 2). Thereafter, the judge asked Gil how he pleaded to "attempted malicious wounding." (*Id.* at 3). At the conclusion of the proceeding, the trial judge misspoke, corrected himself, and then found Gil guilty of two counts of "attempted malicious wounding." (*Id.* at 9-10). The judge began the sentencing hearing on June 10, 2019, stating there were "two counts of attempted malicious wounding" before the court. (6/10/2019 Tr. at 3). Trial counsel referred to the seriousness of the "attempted malicious wounding," (*id.* at 21); and in his allocution, Gil also noted that he had "pleaded *Alford* plea to attempted malicious wounding." (*Id.* at 27). The trial judge misspoke again as he began pronouncing sentence, (*id.* at 29), trial counsel again corrected the trial judge, and the trial judge corrected his error and stated it was "two counts of attempted malicious wounding." (*Id.* at 30).

a transcript that may be flawed by omissions, accurately reflects what transpired.'" *Id.* (quoting *Stamper v. Commonwealth*, 220 Va. 260, 280-81 (1979)). The record does not reflect that appellant objected to the sentencing order within twenty-one days after its entry; thus, we treat that order as a verity on appeal. The sentencing order conclusively establishes that the trial court convicted and sentenced appellant for two counts of attempted malicious wounding.

Dkt. No. 26-4 at 77-78. The record thus reflects that any mistake by the trial judge in his oral pronouncement was corrected in real time and that the written orders reflecting Petitioner's plea and sentence are accurate. This Court agrees with the Court of Appeals of Virginia that Ground VI has no merit and it will therefore be dismissed.

Ground VII: <u>Failure to produce in another jurisdiction violation of the Sixth Amendment Confrontation Clause and unconstitutional Fourth Amendment Seizure</u>.

Gil's petition challenges his convictions in the Circuit Court of the City of Virginia Beach for two counts of attempted malicious wounding, eluding police so as to endanger another, reckless driving, and driving without a valid license. Dkt. No. 1 at 1. Ground VII raises a claim related to a conviction "for improper registration," *in absentia* in the Accomack County General District Court, Accomack County, Virginia on March 28, 2018. *Id.* at 22-23; Dkt. No. 19 at 30. Gil alleges he missed the March 28, 2018 trial because he was transported to the Eastern State Hospital for a mental examination. *Id.* The offense allegedly occurred on February 17, 2018, and resulted in Gil's car being towed, impounded, and searched. Dkt. No. 1 at 22-23.[22] This claim was not raised in state habeas and is therefore

---

[22] The Virginia Judicial System online records indicate that Gil was convicted, in *absentia*, on March 28, 2018, in the Accomack General District Court for improper registration in violation of Virginia Code § 46.2-613.(1). Gil was fined $100, assessed $96 in costs, but no confinement was imposed. *See* https://eapps.courts.state.va.us/ (General District Court Tab, Accomack County Tab, Traffic/Criminal Tab) (search "Gil, Patrick") (last viewed Jan. 14, 2025). *See Colonial Perm Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("most frequent use of judicial notice of ascertainable facts is in noticing the content of court records") (collecting cases); *see, e.g., Lynch v. Leis*, 382 F.3d 642, 647 & n.5 (6th Cir. 2004) (taking judicial notice of state court records available to public online).

deemed simultaneously exhausted and defaulted; and Gil has not established cause to excuse the default.[23]  Accordingly, Ground VII will be dismissed.

Ground VIII: Mental Health Evaluation.

In this claim, Gil alleges a "Mental Health issue," that his evaluation at Eastern State Hospital did not follow "proper procedure" and involved "mental coercion, duress, mistreatment sleep deprivation," a "medication problem," and that he "wasn't competent to stand trial" and requested his attorney to secure a "second evaluation." Dkt. No. 1 at 25-26.

Gil argues that he raised this claim in state habeas, but the record is to the contrary. In state habeas claim (b), Gil alleged ineffective assistance of counsel.  In that claim, Gil asserted counsel was ineffective because she misled Gil into pleading guilty and he did not assert a separate claim regarding "mental health."  In support of his claim of ineffective assistance of counsel, Gil alleged that he "just didn't understand what was going on due to my mental instability, medication, mistreatment, coercion, duress due to noise, not being able to sleep in the housing unit, the lies that Ms. Miller told me a promised to get videos and not coming through with the promise, and sleeping on the floor for six months."  Hab. at 12-13.  The state habeas court found Miller's affidavit credible and dismissed claim (b).  Dkt. No. 26-6 at 20.  The following is an excerpt from Miller's affidavit credited by the state habeas court in dismissing Gil's claim of ineffective assistance.

> After meeting with [Gil] numerous times, I did not believe he needed additional evaluation. If I did, I certainly would have asked the courts to have him reevaluated. I have done so with respect to other clients and would not have hesitated to do

---

[23] The present petition does not challenge the Accomack conviction because that conviction is not listed in the relevant portion of the § 2254 form Gil filed. Dkt. No. 1 at 1. If Gil seeks to challenge the Accomack County conviction, he must do so by a separate § 2254 petition. *See Hardemon v. Quarterman*, 516 F.3d 272, 275 (5th Cir. 2008) (Rule 2(e), Rules Governing § 2254 Cases U.S. Dist. Courts, requires "that challenges to judgments from multiple state courts must be raised in separate petitions."); *Fisher v. Carroll*, 375 F. Supp. 2d 385, 390 n.3 (D. Del. 2005) (since claim involved the execution of petitioner's sentence from a different state, "the issue is not properly before the Court") (citing Rule 2(e), Rules Governing § 2254 Cases U.S. Dist. Courts).

so·with petitioner. He was able to discuss his case, options, and sentencing.

*Id.* at 19; 26-7 at ¶ 11.  Miller had a report from a forensic psychologist, Dr. Keenan, who had

deemed Gil restored as competent and discharged Gil on June 19, 2018.  *Id.*  Miller subsequently

obtained a report dated September 11, 2018 by a second forensic psychologist, Dr. Elizabeth

Wheeler, that deemed Gil competent to proceed and sane at the time of the offense.  *Id.*

Ground VIII was not raised in state habeas and is therefore deemed simultaneously

exhausted and defaulted; and Gil has not established cause to excuse the default.

Accordingly, Ground VIII will be dismissed.

### IV. Conclusion

In sum, each of Petitioner's habeas claims are defaulted or meritless.  Accordingly,

Respondent's Motion to Dismiss, Dkt. No. 25, will be granted, and the petition will be dismissed

by an order to be issued with this opinion.[24]

Entered this ___*15*___ day of _____, 2025

Alexandria, Virginia

_____
/s/
Rossie D. Alston, Jr.
United States District Judge

---

[24] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner fails to meet this standard.